**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENETTA B., for her minor child, N.B., <br><br> *Plaintiff,* <br><br> v. <br><br> FRANK BISIGNANO, Commissioner for Social Security, <br><br> *Defendant.* | Case No. 1:23-cv-03978 <br><br> Hon. Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Kenetta B.'s[1] application for Supplemental Security Income (SSI) on behalf of her child N.B.[2] The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). (Dkt. 7.) For the reasons stated below, Plaintiff's Memorandum in Support of Summary Remand (Dkt. 13) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**BACKGROUND**

On August 26, 2019, Plaintiff Kenetta B., on behalf of her child N.B., applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, alleging an onset day of March 26, 2019 (later amended to August 26, 2019). (R. 15, 200–09.) The Social Security

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name.
[2] Pursuant to Fed. R. Civ. P. 5.2(a)(3), the Court refers to Plaintiff's minor child by her initials.

Administration denied Plaintiff's claim on November 18, 2019, which was also subsequently denied upon reconsideration on July 22, 2020. (*Id.* at 15, 110–12, 117–20.) At Plaintiff's request, an Administrative Law Judge ("ALJ") conducted a hearing on November 2, 2021. (*Id.* at 15, 28–68.) The ALJ issued a written decision dated October 25, 2022, finding that N.B. was not disabled during the relevant period under section 1614(a)(3)(C) of the Social Security Act. (*Id.* at 22.) The Appeals Council denied review on April 19, 2023, rendering the ALJ's decision the final decision of the Commissioner subject to judicial review under 42 U.S.C. §405(g). (Dkt. 13 at 2.)

In the decision, the ALJ applied the three-step sequential evaluation process for children. (R. 16–22.) The ALJ found at Step Two that N.B. had the following severe impairments: impulse control disorders/attention deficit hyperactivity disorder (ADHD), anxiety, depression, and learning disorder. (*Id.* at 16.) At Step Three, the ALJ concluded that N.B.'s impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. (*Id.* at 17–18.) Specifically, the ALJ determined that N.B.'s severe impairments both (a) did not meet or medically equal any listing, (b) nor did N.B. have an impairment or combination of impairments that functionally equals a listing. (*Id.* at 19.) The ALJ found a marked limitation only in attending and completing tasks, and less than marked or no limitations in the other domains, including acquiring and using information, interacting and relating with others, caring for yourself, moving about and manipulating objects, and health and physical well-being. (*Id.* at 19–22.) Based on these findings, the ALJ concluded that N.B. was not disabled under the Social Security Act during the relevant period. (*Id.* at 22.) As this is a child SSI case, the ALJ did not assess residual functional capacity (RFC) or past relevant work.

**DISCUSSION**

## I.  Standard of Review

The Social Security Act provides that a child is disabled, and thus potentially eligible for SSI, if the child has a medically determinable physical or mental impairment that results in marked and severe functional limitations and that has lasted, or is expected to last, at least twelve consecutive months. *See Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009). To evaluate whether a child meets this standard, an ALJ follows a three-step sequential process: (1) whether the child has engaged in substantial gainful activity; (2) whether the child has a severe medically determinable impairment or combination of impairments; and (3) whether the impairment(s) meets, medically equals, or functionally equals a listed impairment. *See L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1150 (7th Cir. 2019). In assessing functional equivalence, "the ALJ considers six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Id.* at 1150–51. "Functional equivalence exists, and a child qualifies for benefits, if the ALJ finds a marked difficulty in two domains of functioning or an extreme limitation in one." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007). A limitation is considered marked when it seriously interferes with the child's ability to independently initiate, sustain, or complete activities; an extreme limitation very seriously interferes with those abilities. 20 C.F.R. §416.926a(e)(2)–(3).

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ

must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. §405(g).

## II.     Failure to Consider Relevant Evidence in the "Caring for Yourself" Domain

Plaintiff raises two principal challenges to the ALJ's decision. Plaintiff contends that the ALJ erred in her assessment of N.B.'s functional equivalency in the domains of (1) "acquiring and using information," and (2) "caring for yourself," as the Plaintiff contends that the ALJ failed to consider all relevant evidence. (*See* Dkt. 13 at 6–15.) As discussed below, because the ALJ's analysis in the "caring for yourself" domain alone warrants remand, the Court will not address, and thus makes no ruling on, Plaintiff's argument as to the ALJ's "acquiring and using information" analysis.

In the "caring for yourself" domain, an ALJ must consider how well an individual maintains a healthy emotional and physical state, including physical and emotional wants and needs, stress and changes in the environment; and caring for physical health, possessions, and living areas. 20 C.F.R. §416.926a(k). "Caring for yourself means recognizing when you are ill, following recommended treatment, taking medication as prescribed, following safety rules, responding to your circumstances in safe and appropriate ways, making decisions that do not endanger yourself, and knowing when to ask for help from others." *Id.* Adolescents (aged 12 to 18) should be increasingly

4

independent in all day-to-day activities and should feel more independent from others than at ages 6 to 12. *Id.* Adolescents should also begin discovering ways to express their feelings, both good and bad, in appropriate ways. *Id.* Some examples of limitations that the regulations provide in the "caring for yourself" domain are: (i) continuing to place non-nutritive or inedible objects in your mouth; (ii) often using self-soothing activities showing developmental regression or having restrictive or stereotyped mannerisms (e.g., body rocking, headbanging); (iii) not dressing or bathing yourself appropriately; (iv) engaging in self-injurious behavior (e.g., ***suicidal thoughts or actions, self-inflicted injury***, or refusal to take your medication), or ignoring safety rules; (v) not spontaneously pursuing enjoyable activities or interests; or (vi) having disturbance in eating or sleeping patterns. 20 C.F.R. §416.926a(k)(3)(i)-(vi) (emphasis added).

In this case, the ALJ's finding of less than a marked limitation in the "caring for yourself" domain lacks sufficient explanation and supporting evidence. The ALJ's reasoning in this domain consists of the following:

> "The undersigned finds that the claimant has less than a marked limitation in the ability to care for herself. The State agency medical consultants opined that the claimant has no limitation in this area (Exhibits B2A and B5A). The undersigned finds that this opinion [sic] unpersuasive because it is not supported by the record. Her teacher in October 2021 and two of her teachers in 2022 noted no problem in this area (Exhibits B19E, B28E, and B29E). Specifically, recently, in October 2022, the claimant's auto shop teacher reported no problem in this domain, including attendance (Exhibit B29E). Additionally, in October 2022, the claimant's math teacher, who has known the claimant for two years, reported no problem in this domain (Exhibit B28E). In 2022, her new special education teacher reported that she has problems with mood regulation and handling daily stresses but responds well when someone talks with her or going to her social worker (Exhibit B27E)." (R. 21–22)

Plaintiff challenges the ALJ's conclusion that N.B. had less than a marked limitation in the "caring for yourself" domain, arguing that, in pertinent part, the ALJ did not undertake "any discussion whatsoever of N.B.'s psychiatric and therapy records," which "show that [N.B.] has tried to commit suicide three times and has suicidal thoughts." (Dkt. 13 at 14–15).

The Commissioner responds to this challenge by maintaining that the ALJ "properly considered the 2022 statement from plaintiff's special education teacher" and that "earlier in the decision, the ALJ considered plaintiff's medication usage and plaintiff's self-reports in 2021 that she had previously attempted suicide by taking pills in November 2020." (Dkt. 20 at 8.) The Commissioner then quotes directly from *Dorothy B. v. Berryhill* for the proposition that "[t]he Court reads the ALJ's decision as a whole. The ALJ need not repeat analyses that are relevant to multiple parts of his decision." (Dkt. 20 at 8); *Dorothy B. v. Berryhill*, No. 18 C 50017, 2019 WL 2325998, at *4 (N.D. Ill. May 31, 2019). The Court concludes, however, that this proposition is inapt with the case at hand—specifically, why reading the ALJ's opinion "as a whole" would cure sections of the decision neglecting to analyze critical parts of the record, as follows.

As for the pertinent therapy records that the Plaintiff points out were not addressed or analyzed by the ALJ, the Commissioner argues that "plaintiff's therapy records did not provide much more information for the ALJ to discuss." (Dkt. 20 at 8.) In particular, the Commissioner argues that "[t]here is no contemporaneous documentation of the alleged suicide attempts and… [plaintiff's therapy records] did not document any reported suicide attempts post-November 2020, any current suicidal ideation, or give any indication that plaintiff was unable to care for herself." (*Id.*) In conclusion, the Commissioner argues that the "ALJ provided multiple good reasons for finding that plaintiff had a less than marked limitations [sic] in the functional domain of caring for herself" and that the ALJ "built an accurate and logical bridge between the evidence and her conclusions." (*Id.* at 9.)

To the contrary, however, the documentary record before the ALJ included evidence of N.B.'s suicide attempts and continued suicidal ideations through at least April 15, 2021, alongside ongoing therapy and psychiatric treatments that included prescriptions for multiple psychiatric

6

medications. (R. 549–50, 647, 695.) Moreover, during N.B.'s hearing, Plaintiff also testified to three suicide attempts, with a "threatened" attempt just two or three months prior to the hearing on November 2, 2021. (*Id.* at 38.) In the ALJ's narrative discussion, she had noted N.B.'s two suicide attempts by taking pills, as well as Plaintiff's aforementioned testimony as to the three cumulative suicide attempts. (*Id.* at 17–18.) These mentions encompass the totality of the ALJ's discussion of N.B.'s self-harm and suicidal ideation evidence, however. Indeed, in reaching the "caring for yourself" domain—the domain that most directly concerns emotional regulation, coping, and safety-related behaviors—the ALJ did not explicitly weigh (or even reference) the therapy and psychiatric evidence reflecting N.B.'s suicidality, the persistence of suicidal thoughts, and the degree of support and medications needed. Instead, the domain analysis rested exclusively on teacher statements. (*Id.* at 21–22.)[3]

The ALJ's incomplete analysis does not assure the Court that she considered the substantial evidence relevant to this domain, and her discussion fails to provide a logical bridge between the evidence and her conclusion. This is not a circumstance in which the Court can confidently discern how the ALJ weighed the evidence of suicidality in evaluating the "caring for yourself" domain—nor is the Court permitted to supply reasoning that the ALJ herself did not articulate. *See Warnell*, 97 F.4th at 1052–53. The ALJ's domain discussion does not indicate, for example, whether she believed that the suicide attempts were isolated, whether she discounted them on a particular

---

[3] The ALJ also referenced the State agency medical consultants' opinion that N.B. had "no limitation in this area." (R. 21, 90–97, 100–09.) Although the ALJ found this opinion "unpersuasive" on the ground that it was "not supported by the record," (*Id.* at 21), she did not identify or analyze any evidence substantiating that conclusion. As discussed more fully *infra*, the ALJ failed, on multiple fronts, to explain how she arrived at a finding of "less than a marked limitation" in this domain. By rejecting the "no limitation" opinion as unsupported, the ALJ apparently or implicitly found that the record demonstrates *some* limitation, yet she offered no explanation for why or how that limitation was "less than marked" rather than "marked." *See, e.g., Hopgood*, 578 F.3d at 700 (criticizing the ALJ's incomplete explanation as to why certain testimony was unpersuasive).

evidentiary basis, whether she believed they were controlled by treatment, or how she evaluated the level of support required to keep N.B. safe and emotionally regulated. Seventh Circuit precedent requires the ALJ to explain *why* apparently strong evidence favoring disability is outweighed, if that is indeed the ALJ's conclusion. *See Murphy*, 496 F.3d at 634–35 (reversing where the ALJ failed to explain why he gave no weight to portions of the school records supporting disability and did little to counter that evidence); *Hopgood*, 578 F.3d at 700 (remanding, in part, where the ALJ inadequately explained his assessment of a teacher's evaluation); *Robinson ex rel. M.R. v. Astrue*, No. 10 CV 4056, 2012 U.S. Dist. LEXIS 122832, at *37 (N.D. Ill. Aug. 29, 2012) (finding the ALJ committed reversible error by not discussing evidence related to suicide); *Angela O. ex rel. D.O. v. Kijakazi*, No. 20 C 4982, 2021 U.S. Dist. LEXIS 220026, at *19-20 (N.D. Ill. Nov. 15, 2021) (reversing and remanding where the ALJ did not analyze evidence of self-injurious behavior, but rather cherry picked evidence showing apparently no issue in the domain).

Although an ALJ is not required to explain her reasoning explicitly within the paragraph designated for a particular domain, she still must sufficiently articulate her evaluation of the evidence and build an accurate and logical bridge between the evidence and her conclusions. *See, e.g.*, *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) (finding that an ALJ need not lay out their determinations and supporting reasoning in a "conclusion" section, as opposed to a "discussion" section). Here, the ALJ failed to connect her references to N.B.'s self-injurious behavior in her statement of facts, (R. 17-18), to her subsequent finding of "less than a marked limitation" in this domain, (*Id.* at 21-22). Despite citing regulations identifying self-injurious behavior as an example of difficulty in caring for oneself, (*Id.* at 19), the decision reflects no meaningful weighing anywhere in the opinion of how N.B.'s history of such behavior factored into the ultimate domain assessment. *See, e.g., Crawford ex rel. C.D. v. Berryhill*, No. 16 C 11450, 2018 U.S. Dist. LEXIS

6988, at *14 (N.D. Ill. Jan. 17, 2018) (remanding the case because "[t]he ALJ did not address evidence throughout the record of impulsive and aggressive behaviors such as hitting siblings, classmates and teachers and ignoring school safety rules" in the caring for yourself domain). And, even if it is assumed that the ALJ did consider in her analysis the summarily mentioned evidence of self-injury and suicidal ideation, the ALJ did not include or articulate *how* the evidence of self-injurious behavior was considered. *See Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487–88 (7th Cir. 2007) ("We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies.").

Beyond the ALJ's failure to meaningfully analyze the evidence of self-harm, the Court observes that even in the findings of fact, the ALJ made (at most) a cursory reference to N.B.'s psychiatric and therapy records.[4] (R. 16–17.) While, as noted *supra*, the ALJ is not required to explain her reasoning in a domain-specific paragraph, she should have discussed and considered this line of evidence somewhere in her decision and weighed it in reaching her domain conclusions. The Commissioner cannot now cure this defect by arguing *post hoc* that the evidence "did not provide much more information for the ALJ to discuss." (Dkt. 20 at 8.) Not only did the ALJ fail to meaningfully analyze the pertinent evidence in these records, but also the *Chenery* doctrine prohibits affirming an administrative decision on grounds that the ALJ did not invoke. *See Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022).

---

[4] The ALJ's reference to the psychiatric and therapy records, in relevant part, is as follows: "[T]he claimant has history of anxiety and depressive disorder treated with psychiatric medications (Exhibit B8F).… During this time, the claimant was diagnosed with major depressive disorder, single episode, unspecified, and referred for behavior health and counseling for a conduct disorder (Exhibit B7F). In February 2021, individual therapy notes documented that she reported being treated unfairly by her parents and spending a lot of time in her room (Exhibit B8F). Thereafter, she reported attempting suicide by taking pills the prior fall of the year, irritability, and verbally lashing out at friends and family (Exhibit B9F)." (R. 16-17.) References in the opinion to the specific medications and dosages N.B. was prescribed are omitted in the above quote for brevity.

Accordingly, remand is required for the ALJ to evaluate and articulate the functional impact of N.B.'s history of self-harm and psychiatric treatment within the "caring for yourself" domain, as the decision is not sufficiently supported by substantial evidence. Nor is the error harmless. The ALJ already found a marked limitation in "attending and completing tasks," (R. 20), and two marked limitations would establish functional equivalence under 20 C.F.R. §416.926a.

To be clear, in concluding that this issue requires remand, the Court makes no determination as to whether N.B.'s attempts at self-harm and suicidal ideations require a finding of a marked limitation in the domain of "caring for yourself," nor whether the psychiatric and therapy evidence in the record is or is not sufficient to support a different finding. The Court holds only that the ALJ failed to sufficiently articulate and explain her conclusion in this domain, and that this deficiency requires remand.

In light of the Court's decision to remand on that issue, the Court need not address N.B.'s remaining arguments. The Commissioner should not, however, construe the Court's silence as an indication that the ALJ's initial adjudication was appropriate as to the outstanding issues.

**CONCLUSION**

Plaintiff's Memorandum in Support of Summary Remand (Dkt. 13) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.


DATED: March 17, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge

11